Last case for this morning is United States v. Nemeth, 24-8049. Counsel for Appellant, if you'd make your appearance and proceed, please. May it please the Court, I'm John Grevelius on behalf of James Nemeth. Your Honors, we're here today to talk about an issue of first impression, whether a dog even if that dog is sniffing outside that dwelling from a lawful vantage point. Now, excuse me, now the Supreme Court's historical treatment of dwellings as receiving the most protection the Fourth Amendment provides should compel this court to conclude that, yes, a dog sniff of a dwelling is a search because it reveals information about the details of that dwelling that only an entry, a physical entry would otherwise uncover. For you to prevail, don't we have to agree with you that the record supports that this dog was capable of detecting lawful activity inside the motel room? I don't believe this court has to agree with me on that basis. Certainly, if it does, I should prevail. But I believe that no matter what, even a dog that can only detect contraband is nonetheless performing a search on a dwelling when it sniffs. And what authority supports that? Well, Your Honor, I cite specifically affirmative authority in the Whitaker decision in the Seventh Circuit, and I believe also this flows directly from Kylo. So Whitaker seems to be a case you would want us to kind of copy and paste because that's the analysis you're advocating, right? For the most part, correct. But it relies on Justice Kagan's concurrence in Jardines, right? That is correct. So what do we do with that? Well, Your Honor, it does rely on a concurrence, but that concurrence is correctly reasoned and it isn't contradicted by any Supreme Court precedent or certainly any precedent in this circuit, for that matter. The Jardines majority, if I'm saying that case correctly, I may be mispronouncing it, I don't know, but noted that this is an open question. And it's not just that they said that, it's that they did not respond to the concurring opinion's assertion, frankly, that Kylo compels us and that Kibayas and Place are simply limited to the facts and circumstances of those cases. And yet the majority says absolutely nothing in response to that. And that's telling. Let me just deal with one threshold issue. You use the words search of a dwelling, whether it is a search of a dwelling, the dog sniff, the dog wasn't in the dwelling, the dog was outside. I have some concern when I go back and look at the district court's analysis that it was focusing on whether there was a reasonable expectation of privacy in the hallway. And what particularly troubles me is when I look at the defendant's suppression motion, there is good reason for the district court to have been focusing on the hallway. In fact, its last statement is to the effect of hallway door is what it uses, whether there was a reasonable expectation of privacy relative to the hallway door. Well, it seems to me that your argument here is different than the argument that was raised before the district court. And if that's true, then I'm a little troubled by whether you preserve that argument. Well, Your Honor, certainly the government hasn't contested preservation and for good reason, because in that motion, we argued several different theories as to why this is an unconstitutional search. One of them is the one I'm talking about today, which is Kylo and Whitaker. And no, you use Kylo, but where and you talked about Whitaker, but that is but when you summed up what your focus was, it was the hallway door that is very different than what you're saying on appeal, where you say that in your brief, to be clear, Mr. Nemeth or Nemeth is not asserting law enforcement performed an unlawful search of the hallway, but rather of his room. There is no sentence in your brief below that says that. Is there? Your Honor, I can't speak to that specific literal sentence being in that motion, but the motion clearly advocates for a Katz based analysis on the sniff of the self using the Hardinus rationale that I'm advocating today. Isn't there a distinction with a difference between what you're advocating today in an argument involving the sniff of a hallway? Because there, as you acknowledge, you know, a common hallway, there would be differences of whether there is some reasonable expectation of privacy. But the whole analysis changes over whether you're talking about a search of a dwelling itself. Well, again, Your Honor, I mean, I believe that in that motion, we did lay out the Whitaker test, which does, well, it's the same analysis that I'm advocating today, that even though police are in a lawful space, so to speak, it's still a search because they're still gathering information about the inside of the dwelling. And I do believe that was in the motion and properly before the court. And the court essentially disagreed with us and said, no, this analysis doesn't apply. Also, the court also ruled against us on the whole idea that the dwelling in a hotel room are essentially different under a Fourth Amendment sort of reasonable expectation of privacy weight. Well, when you look at the district court's analysis, it didn't appear to disagree with you. It appeared to be talking about something different than what you're talking about now. That's what gives me pause. The district court was talking about the hallway. That's all it talked about. It didn't talk about how the hallway related to what was in the room. It didn't talk about any of that stuff. It talked about the hallway. I'll let you go on, but it seems to me that there's a concern here, albeit the government didn't raise any waiver concerns of its own. So please proceed. Well, OK, Your Honor, with that, but the same logic that we are talking about with Kylo and Whitaker would apply here. As I just mentioned, the district court made this point. The government, I don't think, does so explicitly in that the protection someone receives in their hotel room is the same protection that you would receive as an apartment tenant, as a homeowner. And again, I don't hear the government seriously contesting that, but that analysis would apply here. In Kylo, there was a physical intrusion into the home with the wasn't there. Pardon? Wasn't there a physical intrusion into the home? In Kylo? Yeah. No, Your Honor, there was not. Well, I mean, the thermal imaging, right? Well, no, Your Honor. So there's a discussion in there, and it's actually at pages 35 and 36 where they distinguish between what they call off-the-wall surveillance and through-the-wall surveillance. And I believe Your Honor would be referring to through-the-wall surveillance where you have what we have in the cartoons is like x-ray vision, and you're actually seeing through. That's not what was at issue in Kylo, and they discussed that. What it was measuring was thermal radiation or heat leaking from the surface of the building, and that allowed them with this technology to sort of make inferences, albeit very crude inferences. But the court said, you know, nonetheless, even though, you know, we can't necessarily always gather intimate details, it's all details that matter under the Fourth Amendment. Here, there wasn't anything they were gathering, though, from inside the residence. This was a dog sniff of the air, basically, underneath the door. It was a scent, and there was no technology used to gather it. Is that distinguishable, then? Well, Your Honor, I guess I disagree with the premises there. First of all, there is technology. This is sense-enhancing technology, not in public use or common use, and that was never disputed. And I certainly think that, just as we know, most common citizens don't have highly trained narcotics dogs on leash. But also, just as in Kylo, it is emanating from, this is basically another through-or-off-the-wall type of surveillance that the dog is getting. Yeah, the dog's not literally inside sniffing the air inside, but this is coming out, and it's only detectable through this sense-enhancing technology that only, apparently, police have. Well, it seems that, just as Kagan's reading of Kylo emphasized this language that I think helps your position, but the language is obtaining, by sense-enhancing technology, any information regarding the home's interior. But later, in Cabayas, the Supreme Court talked about Kylo, but still focused on the fact that the thermal imaging uncovered only lawful activity. And that's where I'm not yet persuaded, still studying, but maybe you could help me with why we should rely on Justice Kagan's concurrence in light of what Cabayas said about Kylo. Sure, Your Honor. Well, I think to read Cabayas is foreclosing the argument I'm making today. As the court, to read it to say that the court was affirmatively stating that under no circumstances would a dog sniff be a search, I think would be to overread it for several reasons. And first of all, as the majority in Cabayas specifically noted, this was a car search case. And after the very sentence Your Honor identifies, the majority goes back and says, well, Kylo's distinguishable because a sniff of, or a non-detection of contraband in the trunk of a car is different than Kylo. Next sentence, a dog sniff during a conceitedly lawful traffic stop that reveals no other information other than the location of a substance is, you know, it's distinguishable from Kylo. But again, this is tying it back to the specific instances or circumstances of the case. And I would think that if Cabayas were actually establishing this broad rule that sniffs are never searches or that you don't ever have this reasonable expectation of privacy in your home, I would think they would say a lot more than just that. I mean, if you look at Kylo itself, they discuss cases like Arizona v. Hicks, where if Your Honor's recall, there's a search in an apartment where officers are allowed to be, and they go in and they see that there's this, what looks to be a stolen stereo. And they simply just pick up this turntable and look, and that search did nothing more than confirm or maybe dispel that that was contraband. That is a stolen stereo. However, that de minimis search was nonetheless a search of the apartment, and that it's the details of that apartment that are sacrosanct. And so I would think, again. And you're not focused on there having to be unlawful? Correct. It's any. It's any details. Yes, Your Honor. And so, and then, you know, certainly as I've talked about with Hardinas, I think that the majority would have had more to say about Cabayas, given that the concurrence was so, well, obviously unambiguously asserting that Cabayas just simply did not control. And the majority said absolutely nothing about that. And then certainly, again, we do have Whitaker, which supports my argument as well. And adding, frankly, another layer that we've talked about earlier in that this hallway, it's not curtilage, but there is some sort of understanding that in a hotel, you're going to have certain types of behaviors that you're not going to have on a public street. So it's a little bit different in that regard, too. But it is public airspace, right? I mean, in the same sense that the Morales case, we said that an odor emanating from a car is emanating into public airspace. And you don't have any reasonable expectation of privacy in public airspace. I'm not quite sure how I see that as different from a public hallway in a motel. Well, Your Honor, I'm not. What's your reasonable expectation of privacy? Well, Your Honor, I'm not. In an odor emanating from your room. Well, it would be the same, Your Honor, as the thermal radiation emanating into public airspace in Kylo. There's no question that that was emanating into public airspace. The police were actually stationed on a public street when they measured it. And so under that theory, Mr. Kylo would have lost, clearly. But it's when we have sense-enhancing technology that allows police, and only that technology that allows police to discover this information. I have a question about the record, and it kind of ties back to the first question that I asked you. What is your position on what the record establishes? Either because there is a fact, or there is something that wasn't challenged, as clearly erroneous, about whether the dog could uncover only contraband? Well, that was brought up, as a matter of fact, and resolved in the sense that the tads, it was trained on tads, wafers that emanate, I believe they emanate the smell of fentanyl, but they are not fentanyl, they're not contraband. And I think it was uncontested and agreed upon below that the dog was, in fact, trained on those, and could alert to tads these wafers. Well, I guess my question goes to, if we're understanding the dog as the quote unquote device that's relevant to the cat's question here, is this a device that's capable of detecting only contraband? Or is this a device that's capable of detecting contraband and lawful activity? Well, yes. Based on what the record shows. From what the record shows, I believe that we have a device that shows both, and that's my secondary argument in my brief. Certainly, my primary argument is we don't even need to get to that question. Because of the home. Because of the home. But certainly, that is also my argument, yes. And my other question is concerning the district court's reliance on Lewis. That case, the Seventh Circuit's understanding of the reasonable expectation of privacy is different than how our circuit understands the reasonable expectation of privacy in a motel room, right? I believe it does for hotel rooms, yes. For hotel rooms. So it's sort of premised on law that's even contra to our understanding of motel rooms are more like homes in the Tenth Circuit, so to speak. Absolutely correct, Your Honor. Let me understand your first line of discussion with Judge Rossman. Are you saying that the dog could detect something that is not contraband? And if that is so, how do we square that with the Supreme Court precedent that turns search or no search on the fact that a dog sniff can only detect contraband or not? Well, yes, Your Honor. I am asserting that the dog also is trained on non-contraband. And so in my argument in the briefs, and it's my position again today, that that being the case, co-bias and place are just distinguishable. And then it would be a search, certainly under that rationale. Well, how are they distinguishable when the Supreme Court has said that that is the essence of a dog search? It's not like we're in a position to overrule the Supreme Court on what the character of a dog search is, right? Well, I'm not asking the court to overrule the Supreme Court. That's simply a factual question on whether the device in question is what its capabilities are. And in this particular case, it's a factual matter that was resolved that, yeah, the dog was trained on TADS. This particular dog? Correct. I'm not asking the court to make any judgment about canines in general. I see my time is up. Thank you. May it please the court. My name is Mackenzie Morrison, and I'm here today on behalf of the United States. I will spend, or start at least, at the primary argument that Your Honors had questions about in an appellant's argument. That being that officers acted lawfully when they conducted the sniff in the motel hallway, because it was not a search of the inside of the motel room, and Nemeth did not have a reasonable expectation of privacy outside of that hotel room. I thought that the government's position didn't have anything to do with that. That was the district court argument. But on appeal, you say the question is whether a sniff of the open air space outside a motel room violates the occupant's reasonable expectation of privacy within that room. So to the extent there was another argument available that would have reprised your defense or your affirmative position in the district court, you don't do that on appeal. You're focused on the room. Yes. Yes, Your Honor. That is correct. However, it is noteworthy that the reasonable expectation of privacy in the hallway is part of the analysis on why it can't be a search of the inside of the hotel room, as we see in the cases that we've been talking about, Place, Cabayas, and Kylo. But of course, the starting point for us is to break apart the two different approaches under the Fourth Amendment searches, property-based approach, Florida v. Hardines, and the privacy-based approach. We have starting point of Katz and Kylo, and we get into Cabayas and Place. It is important to note because Nemeth has conceded any property-based approach. So we're not talking about Hardines. We're in the world of Kylo, if you will, or Katz. And... Well, we're not. I mean, just because he's conceded or has not challenged on appeal the property-based approach, there is very much a question about Justice Kagan's concurrence in that case. Do you agree? I agree in the sense that it is a concurring opinion and not binding precedent for this court, and would actually point the court to the precedent and bright line Fourth Amendment law. But it is important to break apart the property-based approach from the privacy-based because, again, he has conceded that law enforcement could lawfully be in that hotel. So property-based approach is not for this court. We are under the privacy-based approach, which in Kylo was the thermal imager case. Now, the important point in that case is that the court was really concerned with what is the information that the law enforcement is getting by use of this device? Intimate details. In fact, the court gave an example of a lady of the house taking a bath. Law enforcement had that information using that device. That is in contrast with what you get with a sniff of a dog. Kylo, the language from one, not only is there the any information language, which has been talked about that's in Kylo, but Kylo also says, quote, the Fourth Amendment's protection of the home has never been tied to the measurement of the quality or quantity of information obtained. So the Supreme Court, in fact, and Kylo is not focused on whether it's some woman taking a bath or not, it's focused on the fact that the home is different. And although the Supreme Court case law has said the home is different. So the fact that you and if the Supreme Court is not focused on the quality or quantity of the information that is obtained, why wouldn't the defendant's argument that the fact that you can actually intrude into that home, that dwelling and get and get even if it is contraband. Why isn't that a search? Because the home is different. Place and cabalos came out of a different setting, right? Correct, Your Honor. However, there is a distinction between a home, an apartment and a hotel, which is important. And that's a piece of the picture. But not only that. Hit the pause button. Why is that important? I thought our case law, our case law, unlike Lewis, had determined that the fact that you were in an apartment, you have a reasonable or a hotel room, have a reasonable expectation of privacy in that hotel room. It is important because of how the analysis works with dog sniffs. As Judge Moritz pointed out in Morales-Zamora, this court stated what we're looking at is public airspace emanating out of, in this case, a hotel room. That is why cabalos and place are important here. OK, let's let's try this. Kylo, you've got thermal imaging coming out of the home, right? OK, emanating from the home. You've got a dog in the hallway. You've got odors coming out of the home. You've got a specialty device, Kylo, the thermal imaging thing. Here, the dog. Both instances, they can pick up this stuff that's coming out of the home. You have Kylo saying the quantity or quality of information in question doesn't matter. It is a Fourth Amendment violation that you can do anything that penetrates that home and get something with that special device you would not have if you were not in the home. OK, I've mapped it out for me, for you. Why is that? Why should not the result be exactly the same? Because a dog sniff is fundamentally different in kind and degree from a thermal imager. It does not do what a thermal imager does. And they're not comparable because they're not the same. The closest thing you can say, of course, is that dogs have a better sense of smell than us. But they are not intruding into the home. The scent molecules are emanating out of the hotel room, which is what we see the discussion of Morales versus Zamora, or Morales-Zamora, excuse me. It also is part of the analysis in Cabayas in place. In Kylo, the heat waves are emanating out of the home. In this instance, you have odors emanating out of the home. And so we're talking different technology, but they're both specialized technology that allows you to detect something in the home that you would not otherwise be able to do, but for being in the home. And that is what Kylo says, right? Yes. OK, well, if Kylo says that, Kylo also says that's a Fourth Amendment violation. No, Your Honor. And why is that? Because a thermal imager, when you look at what you're getting from a thermal imager compared to a dog sniff, they're fundamentally different. In what way are they different? How are they different? In the, as I discussed, not only in the kind and degree of information. Because a thermal imager, of course, if you get down to the metaphysical of it, and certainly can't speak to that, you are seeing the details of what is going on inside of that home. You are entering, with the use of that technology, into the home for all purposes. Whereas with a dog sniff, a dog sniff is saying yes to the presence of the smell of controlled substance or contraband, which is emanating into, for all reasons here, public airspace. It's the reasonable expectation. Yes, yes, Your Honor. Do you have a reasonable expectation, even though you're in a home or in a motel room, of scents emanating into a public airway? No. In the same passage of Kylo that I was quoting from, it says, quote, Our cases show all details are intimate details. All details are intimate details. Because the entire area is held safe from the prying of government eyes. So Kylo does not make distinguishing by virtue of thermal imaging and odors. It says all details are intimate details. So why isn't that suggesting that the home is just fundamentally different? Because a thermal imager is, for all purposes, entering that home to get that information. That is what you do not have with a dog sniff. That's not the way it was framed in Kylo. They were talking about the heat waves going out of the home, just as you're talking about odors going out of the home, right? To the extent of that and nothing further. Because you can't get the intimate details of the home. Now, it is important to note that the analysis is still applicable in place in Kobias. Although not a home, the analysis is applicable because we don't see that there's holdings that it was a search of a car, of the inside of a car. We don't see that it was a search of the inside of the luggage. This is important because it brings me back to the point of what a dog sniff is. The molecules, scent molecules emanating from a space where we all agree that law officers could lawfully be. But we don't want to. Do we overread our jurisprudence on dog sniff cases that have been developed in the context of cars and mail and such? And here we categorically have a home. I mean, our case law says a motel room is a home for First Amendment purposes. No, you don't want to overread it. But this conclusion doesn't require overreading it because of how that information is obtained. And I think it's noteworthy of what this court has said in Morales-Zamora, was that there's no other, they said they couldn't think of any other investigative tool that is so limited in kind and information is obtained because, I go back to that kind and degree, of what you are getting and how you are getting it. It doesn't seem to me that the cases are about how you are getting it. To Chief Judge Holmes' point, the thermal imaging was emanating out and the scent is emanating out. It seems that the focus is either, when we're dealing with the home, it's any information that you can't get without a device. And the dog sniff cases are sort of focused on the quality of the information. Dog sniffs are sort of assumed to only detect contraband. And that's all they can detect. Yes. So, but you're not, you don't seem to be making that argument. You're not, you don't seem to be focusing on that. And that's puzzling to me because it seems that that would be how those dog sniff cases, at least in my view, would apply here. Yes, and that point is taken. But you're not arguing that. You don't seem to be focused on the, that we're focused on, is it contraband or is it not contraband? You're not focused on that. I am in the sense that I think it's relevant to this court's analysis in coming to the conclusion that it first wasn't a search of the inside of the hotel room and he had no reasonable expectation of privacy to the air that's coming outside of that hotel room. Because a sniff using that nose is not going into that hotel room. It is a scent that is coming out in that motel hallway and the dog is saying yes to contraband. And that is a piece of the analysis because, as we have discussed, all of the cases in Kibayas in place, and that it does take part in the analysis of what kind of information is being obtained. What is your position on what the record shows here? Is this a dog that was capable of detecting more than contraband? No, Your Honor. In fact, the defense expert testified about these tags. That may be what the court is inquiring about. And a tad actually absorbs the scent of fentanyl. It is a wafer that is put in a jar, has absorbed the scent of fentanyl and emits the scent of fentanyl. This is important because it could be a scent of methamphetamine or one of the other contraband items that the dog is trained on. The dog does not say yes to quantifiable amounts of controlled substances or contraband. It says yes, the smell of contraband, or shows probable cause that contraband is where the dog is saying it is. And that is why we have noted that it's important to point out that the appellant has not raised a reliability issue. So the smell of fentanyl is what we are talking about here, which is why it does not impact the analysis. It's the smell of a contraband substance is what you're saying? Yes. Am I understanding correctly? You are correct, Your Honor. Okay. What did Justice Kagan get wrong in her concurrence? Your Honor, Justice Kagan, concurrence in Hardeen's, to clarify, reason that apartment residents have a reasonable expectation of privacy in the area outside of their apartment. The part of the analysis that the United States position is wrong is that an apartment building, and of course it's a fact-specific analysis, has access, and I say building, the area outside of a door, has access to other apartment renters, other guests of the apartments, pizza delivery men, those sorts of actors. Now, what's important to note, which the Lewis Court pointed out, was that an apartment hallway is even further away from a home, or excuse me, a hotel hallway is even further away from a home than an apartment building is. But we're not going to think Lewis is instructive, right? Because it's Fourth Amendment law about motel rooms is unlike ours. Yes, Your Honor. But Lewis Court is certainly persuasive, because they pointed out what Justice Kagan did not say, and what the Whitaker Court did not say, was that the apartment outside is curtilage. It's a very fact-specific analysis. I'm sorry, go ahead. And here we're dealing with a hotel hallway, which I would agree with the Lewis Court, is further away from a home than what you see with an apartment, because of the nature of what goes on in a hotel hallway. Let's assume that there is no distinction, just there's nothing about the facts in this case that make it not a home. It's a home under the Fourth Amendment. How is Justice Kagan's concurrence helpful to the government? It's helpful in the sense of what we look at when you step outside of the hotel room. We agree, and I see I'm out of time, if I may. We agree that once you close that door, Fourth Amendment protections apply. What is different is when you open that door, and the nature of what is happening. If there are no other questions, we ask that this Court affirm. Thank you. Thank you, counsel. Case is submitted.